

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

August 15, 2016

The Honorable Dan Patrick
Lieutenant Governor of Texas
Post Office Box 12068
Austin, Texas 78711-2068

Ms. Seana Willing
Executive Director
State Commission on Judicial Conduct
Post Office Box 12265
Austin, Texas 78711-2265

Opinion No. KP-0109

Re: The constitutionality of a volunteer justice court chaplaincy program and opening daily judicial proceedings with prayer (RQ-0099-KP)

Dear Governor Patrick and Ms. Willing:

You have each requested an attorney general opinion regarding the constitutionality of a judge allowing a prayer at the beginning of courtroom proceedings.[1] In addition, Governor Patrick has requested an opinion on the constitutionality of a "volunteer-led Justice Court Chaplaincy Program." Patrick Request at 2.

As background, the requests arise due to the practice of a sitting Justice of the Peace in Montgomery County who has established a volunteer chaplain program, inviting "all religious leaders of any faith in [his county] to participate." Patrick Request at 3. Governor Patrick explains that initial motivation for the program was that the Justice of the Peace also acts as coroner and is often required to be a first responder to deaths and must investigate the cause. *Id.* In an effort to provide better comfort and counsel to those present at the scene of the death, and to allow him to focus on his role as investigator, the Justice of the Peace established the chaplain program. *Id.* Governor Patrick further explains that the volunteer chaplains, upon request of a deceased's friends and family, "provide care and counsel to the mourners in those first-on-scene situations," and that they are also invited to "give a brief prayer during the opening ceremonies" of the Justice of the Peace's court proceedings. *Id.* Concerned that these practices may be unconstitutional, the State Commission on Judicial Conduct ("Commission") has strongly cautioned the Justice of the Peace against this chaplain program and his current courtroom prayer practice. *Id.* at 2. Your requests ask this office to address the constitutionality of those and similar practices.

---

[1]Letter from Honorable Dan Patrick, Lt. Gov., to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Feb. 16, 2016) ("Patrick Request"); Letter from Ms. Seana Willing, Exec. Dir., State Comm'n on Judicial Conduct, to Honorable Ken Paxton, Tex. Att'y Gen. at 1–2 (Feb. 17, 2016) ("Commission Request"), https://www.texasattorneygeneral.gov/opinion/requests-for-opinions-rqs.

The First Amendment to the U.S. Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. amend. I. "The Fourteenth Amendment imposes those substantive limitations on the legislative power of the States and their political subdivisions." *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 301 (2000). Your questions therefore require an analysis of whether the courtroom prayer and chaplain practices about which you ask are in violation of the Establishment Clause.

We first address the Commission's question concerning whether a "moment of silence or a perfunctory acknowledgement of religion by stating words to the effect, 'God save the State of Texas and this Honorable Court'" would be constitutional. Commission Request at 2. Both the United States Supreme Court and the Texas Supreme Court have longstanding practices of opening their sessions with such an invocation. *See Marsh v. Chambers*, 463 U.S. 783, 786 (1983). While the U.S. Supreme Court has not directly addressed the constitutionality of this practice, it has repeatedly acknowledged it in the context of upholding other practices against Establishment Clause challenges. *Town of Greece v. Galloway*, 134 S. Ct. 1811, 1825 (2014); *Lynch v. Donnelly*, 465 U.S. 668, 693 (1984) (O'Connor, J., concurring). The Court has explained that the recitation of this type of phrase at the opening of court sessions is like legislative prayer in that it is "part of our heritage and tradition, [and] part of our expressive idiom." *Galloway*, 134 S. Ct. at 1825. Presumably the Court would not continue the practice of beginning its sessions in this manner if it thought doing so violated the Constitution. Courts do not violate the Establishment Clause by opening court proceedings with a statement such as, "God save the State of Texas and this Honorable Court."

We next address the constitutionality of a chaplain-led prayer like that being performed in the court of the Justice of the Peace about whom you ask.[2] "The opening of sessions of legislative and other deliberative public bodies with prayer is deeply embedded in the history and tradition of this country." *Marsh*, 463 U.S. at 786. The Justice of the Peace's courtroom prayer practice as you describe it is in many ways similar to the Town of Greece's practice of opening its board meetings with prayer, which the U.S. Supreme Court upheld in 2014 against a challenge under the Establishment Clause. *See Galloway*, 134 S. Ct. at 1828. In both instances, religious leaders of any faith are invited to deliver a prayer at the beginning of proceedings. *See id.* at 1816; Patrick Request at 3. No guidance is given about the tone or content of the prayers. *See Galloway*, 134 S. Ct. at 1816; Patrick Request at 3. While the public officials themselves participate in the prayer, the public is not required to do so, and nothing suggests that nonparticipants are disadvantaged or disfavored due to their decision not to participate. *See Galloway*, 134 S. Ct. at 1826; Patrick Request at 4. In upholding the prayers in *Galloway*, the Court emphasized that invocations at the opening of legislative sessions address gatherings of people comprising many different creeds:

> These ceremonial prayers strive for the idea that people of many faiths may be united in a community of tolerance and devotion.

---

[2]Although this office does not find facts in the opinion process, we will assume facts described in a request letter as true for purposes of rendering legal advice in an opinion. *See* Tex. Att'y Gen. Op. No. JC-0134 (1999) at 1.

> Even those who disagree as to religious doctrine may find common
> ground in the desire to show respect for the divine in all aspects of
> their lives and being. Our tradition assumes that adult citizens, firm
> in their own beliefs, can tolerate and perhaps appreciate a
> ceremonial prayer delivered by a person of a different faith.

134 S. Ct. at 1823. Justice Kennedy further explained that "legislative bodies do not engage in impermissible coercion merely by exposing constituents to prayer they would rather not hear and in which they need not participate." *Id.* at 1826–27 (emphasizing that giving "[o]ffense . . . does not equate to coercion"). A court would likely apply the same analysis to a courtroom prayer to open proceedings.[3]

The Commission raises a distinction between the legislative prayer addressed in *Galloway* and the courtroom prayer at issue here. Commission Letter at 5. Courts have frequently addressed and upheld opening prayers before state and local legislative bodies, and they have done so in part based on the history and tradition of such legislative prayers since the Continental Congress. *See, e.g., Marsh*, 463 U.S. at 787; *Pelphrey v. Cobb Cty.*, 547 F.3d 1263, 1278 (11th Cir. 2008) (upholding a county commission's practice of allowing volunteer leaders of different religions to offer invocations at meetings); *Simpson v. Chesterfield Cty. Bd. of Supervisors*, 404 F.3d 276, 284 (4th Cir. 2005). Courts have said less with regard to prayer in the courtroom. The Commission points to one Fourth Circuit Court of Appeals decision to support its position that judicial prayer, in contrast with legislative prayer, does not survive scrutiny under the Establishment Clause. *See* Commission Letter at 3; *N. Carolina Civil Liberties Union Legal Found. v. Constangy*, 947 F.2d 1145 (4th Cir. 1991); *see also Peters v. Ashcroft*, 383 F.3d 302, 305 n.2 (5th Cir. 2004) (explaining that cases from different circuits do not control the Fifth Circuit's construction of state and federal law). *Constangy* involved the practice of a state district judge beginning court proceedings each day by personally reciting a religious prayer before the litigants and their attorneys in his courtroom. *Constangy*, 947 F.2d at 1147, 1149. Unlike the facts in the scenario here, the judge in *Constangy* did not invite leaders of all faiths to pray. *Id.* at 1149. Limiting the opinion to "the courtroom prayer at issue," the court concluded that the judge's practice was unconstitutional. *Id.* at 1152.

We have found no federal appellate decisions that have directly analyzed courtroom prayer under the Establishment Clause in the twenty-five years since *Constangy* was issued. The *Constangy* court based its decision in part on the distinction it drew between the historical practice of legislative prayer and the lack of such historical practice with regard to courtroom prayer, stating that "[j]udicial prayer in the courtroom is not legitimated under the Establishment Clause by past history or present practice." *Id.* at 1149. However, as discussed above, the U.S. Supreme Court

---

[3]While the Commission urges use of the *Lemon* test to determine whether the Establishment Clause is violated, many of the U.S. Supreme Court's "recent cases simply have not applied the *Lemon* test." *Van Orden v. Perry*, 545 U.S. 677, 686 (2005); *see* Commission Request at 3; *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971). The Court made no mention of the *Lemon* test in *Galloway*, and it is therefore unlikely that a court would apply it to the similar circumstances presented here.

has opened its sessions with the prayer, "God save the United States and this Honorable Court," since at least 1827. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 29 (2004) (Rehnquist, C.J., concurring in the judgment). Furthermore, the Court has acknowledged that the judiciary has a "long-established practice of prayer at public events." *Lee v. Weisman*, 505 U.S. 577, 635 (1992). The Court has also explained that "*Marsh* must not be understood as permitting a practice that would amount to a constitutional violation if not for its historical foundation." *Galloway*, 134 S. Ct. at 1819. Thus, other courts deciding the issue may disagree with *Constangy* that prayer in judicial settings lacks historical foundation.

Prior to the Court's decision in *Galloway*, it used four different tests to evaluate various actions challenged on Establishment Clause grounds: (1) the three-pronged *Lemon* test; (2) the "endorsement" test; (3) the "coercion" test; and (4) the *Van Orden* test based on history. *See Van Orden v. Perry*, 545 U.S. 677, 699–703 (2005); *Lee v. Weisman*, 505 U.S. 577, 584–87 (1992); *Cty. of Allegheny v. Am. Civil Liberties Union*, 492 U.S. 573, 592–93 (1989); *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971). Although it was difficult to predict which test the Court would apply to a specific set of facts, the court in *Constangy* reviewed the constitutionality of the courtroom prayer under the *Lemon* test. *See Constangy*, 947 F.2d at 1147–49.

However, since the decision in *Constangy*, the Supreme Court, addressing facts analogous to those here, provided clear guidance regarding the constitutionality of prayer before governmental entities and has combined an evaluation of history and coercion.[4] As in *Galloway*,

---

[4] Perhaps the clearest explanation for the variety of approaches the Court has utilized in Establishment Clause jurisprudence comes from the late Justice Scalia:

> As to the Court's invocation of the *Lemon* test: Like some ghoul in a late-night horror movie that repeatedly sits up in its grave and shuffles abroad, after being repeatedly killed and buried, *Lemon* stalks our Establishment Clause jurisprudence once again, frightening the little children and school attorneys of Center Moriches Union Free School District. Its most recent burial, only last Term, was, to be sure, not fully six feet under. . . . Over the years, however, no fewer than five of the currently sitting Justices have, in their own opinions, personally driven pencils through the creature's heart (the author of today's opinion repeatedly), and a sixth has joined an opinion doing so.

> The secret of the *Lemon* test's survival, I think, is that it is so easy to kill. It is there to scare us (and our audience) when we wish it to do so, but we can command it to return to the tomb at will. When we wish to strike down a practice it forbids, we invoke it; when we wish to uphold a practice it forbids, we ignore it entirely. Sometimes, we take a middle course, calling its three prongs no more than helpful signposts. Such a docile and useful monster is worth keeping around, at least in a somnolent state; one never knows when one might need him.

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 398–99 (1993) (Scalia, J., concurring) (quotation marks and citations omitted). Cases like *Marsh* and *Galloway* illustrate that the Court has not utilized the *Lemon* test for prayers before governmental sessions.

nothing in the facts described suggests that the Justice of the Peace compels or coerces individuals in his courtroom to engage in a religious observance. *See Galloway*, 134 S. Ct. at 1825. Instead, the bailiff provides an opportunity for individuals to leave the courtroom during the prayer and explains that participation in the prayer will have no effect on the decisions of the court. Patrick Request at 4; *cf. Galloway*, 134 S. Ct. at 1826 (explaining that although board members participated, they did not solicit participation from the public, and nothing in the record indicated that citizens were treated differently based on whether they participated in the prayer). Accordingly, we believe a Justice of the Peace's practice of opening daily court proceedings with a prayer by a volunteer chaplain as you describe is sufficiently similar to the U.S. Supreme Court's decision in *Galloway* such that a court would likely be compelled to agree with *Galloway* that the long-standing tradition of opening a governmental proceeding with prayer does not violate the Establishment Clause.[5]

Finally, we address the constitutionality of a volunteer chaplain program, whereby religious leaders, upon request, provide counsel to persons in distress. *See* Patrick Request at 9. While we have found no court decisions addressing a volunteer chaplain program exactly like that described, courts have upheld chaplain programs in a variety of other contexts. In *Marsh*, the U.S. Supreme Court upheld the Nebraska Legislature's hiring of a chaplain, who was chosen by the Legislative Council and paid out of public funds. 463 U.S. at 784–85, 794. Courts in other jurisdictions have likewise upheld the hiring of chaplains by a county hospital, prisons, and military establishments in order to provide counseling and guidance to individuals who request it. *See Carter v. Broadlawns Med. Ctr.*, 857 F.2d 448, 457 (8th Cir. 1988); *Johnson-Bey v. Lane*, 863 F.2d 1308, 1312 (7th Cir. 1988); *Katcoff v. Marsh*, 755 F.2d 223, 237 (2d Cir. 1985). In each of these cases, the chaplains were paid by public funds, creating more significant Establishment Clause concerns than exist here, where the chaplains serve on a voluntary basis without cost to the taxpayer and only upon request of those who wish to receive the chaplain's assistance. A court would therefore likely conclude that the volunteer chaplain program as you describe it does not violate the Establishment Clause.[6]

---

[5]Nothing in the facts presented to us indicates "that the invocations denigrate nonbelievers or religious minorities, threaten damnation, or preach conversion." *Galloway*, 134 S. Ct. at 1823. The U.S. Supreme Court has explained that were such circumstances to exist, the questions presented would be different, and they could raise constitutional concerns. *Id.*

[6]The Commission has advised this office that it likewise "does not consider a judge's operation of a Court Chaplaincy Program to be an Establishment Clause issue." Brief from Ms. Seana Willing, Exec. Dir., State Comm'n on Judicial Conduct, to Honorable Ken Paxton, Tex. Att'y Gen. at 1–2 (Mar. 4, 2016).

### S U M M A R Y

A Justice of the Peace does not violate the Establishment Clause by opening a court session with the statement "God save the State of Texas and this Honorable Court."

A court would likely conclude that a Justice of the Peace's practice of opening daily court proceedings with a prayer by a volunteer chaplain as you describe is sufficiently similar to the facts in *Galloway* such that the practice does not violate the Establishment Clause.

A court would likely conclude that the volunteer chaplain program you describe, which allows religious leaders to provide counseling to individuals in distress upon request, does not violate the Establishment Clause.

Very truly yours,

KEN PAXTON
Attorney General of Texas

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee